Roger Milam and Lewis B. Hollabaugh, Nashville, Tenn., for defendant.

---

**UNITED SOUTHERN BANK OF SUMNER COUNTY**

v.

**The GLENS FALLS INSURANCE COMPANY, INC.**

v.

**Larry Joe HARRISON.**

Civ. A. No. 82–3129.

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 26, 1982.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment in a diversity action in which the plaintiff, a Tennessee bank, has sued the defendant insurance company, a foreign corporation domiciled in New York, alleging a compensable loss under its "Bankers Blanket Bond" with the defendant company. The dispute involved the question as to whether the total amount of loss claimed on the "Proof of Loss" as filed by the bank was covered under the terms of the bond.

From the pleadings and the affidavits in the case the facts appear to be as follows:

An employee of the bank established 161 fictitious installment loans in a scheme to embezzle funds from the bank. Each loan carried with it in addition to principal and unearned interest, a "loan origination fee" of $25.00.

After a complaint was filed and answered, there was a series of negotiations. The bank and the insurance company agreed to settle the claim involving the fictitious loans but would not agree as to whether the $25.00 "loan origination fee" is covered by the bond. The amount remaining in controversy is $4,025.00 which figure is arrived at by multiplying the 161 fictitious installment loans by the $25.00 fee. The bank and the insurance company agreed that the matter should be submitted to the Court for resolution in this summary judgment proceeding. Further, the parties have agreed that should the Court grant summary judgment, the amount due the bank is $4,025.00—the combined loan origination fee.

The insuring clause (A) "FIDELITY", under Bankers Blanket Bond No. BND2244445, the contract of insurance in effect between the bank and the insurance company at the time of the loss, provides in part:

The Underwriter, ... agrees to indemnify the Insured for:

### FIDELITY

(A) Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest interest:

(a) to cause the Insured to sustain such loss, and

(b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

The question before the Court is whether the "loan origination fee" constituted an actual "loss" to the bank which would be compensable under the bond. That fee is provided for in the Tennessee Code Annotated, Section 45–2–1106(1)(B)(ii):

A bank may require a borrower to pay to the bank a reasonable sum to reimburse the bank for its' direct costs in *originating, making,* securing, *processing, servicing,* and collecting a loan, and such reasonable sum may be an approximation of such direct costs; provided however, that such approximation may be based on the bank's actual average costs and provided, further, that such approximation shall never exceed an amount equal to Four (4%) Percent of the principal amount of the loan, and also, *provided further, that a bank may make a flat charge of not more than Twenty Five ($25.00) Dollars on any loan in lieu of such direct costs and without direct regard to such Four (4%) Percent limitations;* (emphasis added).

The very able counsel for both parties in this case have been hard pressed to present the Court with applicable case law on the critical question. However, the reasoning followed by the Court of Appeals of Tennessee, Western Section, in *Bank of Huntington v. Smothers,* 626 S.W.2d 267 (1981), provide helpful guidance. That case involved similar facts: a trusted employee had devised a scheme of embezzlement using fictitious notes. There was no dispute as to whether the bank had suffered a serious loss, the question was the amount. The insuring clause in that case was similar to the one hereinabove cited, but the bond also contained an exclusionary clause stating that the underwriter was not liable for "potential income, including but not limited to interest and dividends, not realized by the insured because of a loss covered under this bond". The underwriter in that case argued that its risk was limited to the un-

paid principal balance of the fictitious notes at date of discovery.

Because of the "potential income" exclusionary clause, the Tennessee Court of Appeals held that the amount the bank could recover was limited to the actual "outgo" of the bank's own funds. Accrued interest, the Court reasoned, was not actual "outgo". The bank apparently because of the exclusion clause, could only recover the amount that went into the pockets of the unfaithful employee.

There is no exclusion clause in the bond involved in the case at hand. In fact the parties agree that the settlement reached in this case, although it is not an admission of liability on the part of any party, represents the principal unpaid balance of the loan plus accrued interest earned.

From the facts and reasoning of the *Huntington* case and the facts of the case at hand, the Court reasons as follows:

In the case of a blanket fidelity bond with a clause excluding potential income, the underwriter stands in the shoes of the unfaithful employee and a recovery is limited to the amount that went into his hands. However, without the exclusion of potential income, the underwriter stands in the shoes of each fictitious borrower at date of discovery. Therefore, recovery is for unpaid principal, accrued interest, and the loan origination fee.

Plaintiff's motion for summary judgment is granted and the bank is entitled to the $4,025.00 plus interest at the rate of 10% from November 24, 1981.